IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 6, 2017

**STATE OF TENNESSEE v. RANDEL LEE BURNETT, II**

**Appeal from the Circuit Court for Fayette County**
**No. 15-CR-24      J. Weber McCraw, Judge**

_____

**No. W2016-01712-CCA-R3-CD**

_____

The Appellant, Randel Lee Burnett, II, pled guilty in the Fayette County Circuit Court to vehicular homicide by intoxication, aggravated child neglect, and three counts of vehicular assault.  After a sentencing hearing, he received an effective twenty-four-year sentence.  On appeal, the Appellant contends that the trial court improperly enhanced his sentences and erred by ordering consecutive sentencing based upon his being a dangerous offender.  Upon review of the record and the parties' briefs, we conclude that the trial court improperly applied two enhancement factors during sentencing but that the length of the Appellant's sentences is not excessive.  We also conclude that the trial court did not err by ordering consecutive sentencing.  Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

William D. Massey, Memphis, Tennessee, for the appellant, Randel Lee Burnett, II.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Matt Hooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In March 2015, the Fayette County Grand Jury indicted the Appellant for first degree felony murder, vehicular homicide by intoxication, vehicular homicide by recklessness, three counts of aggravated child neglect, aggravated child neglect of a child

less than eight years old, three counts of reckless aggravated assault, and three counts of vehicular assault. On June 23, 2016, the Appellant pled guilty to vehicular homicide by intoxication, aggravated child neglect, and three counts of vehicular assault. The State dismissed the remaining charges.

At the guilty plea hearing, the State gave the following factual account of the crimes: In April 2014, the Appellant was living at the Maturen residence on Johnson Drive off Highway 194. Shortly before midnight on April 12, the Appellant decided to drive his Mini Cooper convertible to Gurkin's convenience store for a "beer run." The Appellant had been drinking twenty-four-ounce beers throughout the day. The four children at the Maturen residence, the victims in this case, wanted to go with the Appellant to get snacks. The children were Brandon Anderson, an eleven-year-old who was spending the night at the Maturen home; Bobby Maturen, a child under the age of eight; Cole Maturen, a child under the age of sixteen but over the age of eight; and Robert Maturen, Jr., a child under the age of sixteen but over the age of eight. The State explained as follows:

> They got to the store. The defendant bought beer. The children bought snacks and candy. They got back into the car and headed back north on 194 again in Fayette County. Just after leaving the city limits, the State would have expected to call at least one of the children to testify that the defendant was traveling at a rate of speed at about a hundred or a hundred and ten miles per hour. This is a forty-five mile per hour zone. Just outside the city limits the defendant lost control of the vehicle, ran off the road, the vehicle flipped numerous times. At no point in this process had the children been in their seatbelts. They were all unrestrained and all four of the children were thrown out of the vehicle as it flipped multiple times through the ditch over many yards along, parallel to 194.

Bobby Maturen landed in a nearby ditch, and the vehicle ended up flipping on top of him, pinning him partially underwater. It took twenty minutes for emergency personnel to lift the car off him. Cole Maturen landed on the side of the road opposite the overturned car and received various internal injuries and broken bones. Brandon Anderson was found lying on the side of the road and was "brain dead from the beginning."

After hearing about the crash, the father of the Maturen boys went to the scene and advised police officers that a fourth child had been in the car. Officers began searching and found Robert Maturen, Jr., about 140 feet from the vehicle. He had very serious

injuries and broken bones. All three of the Maturen boys survived, but Brandon Anderson died from his injuries.

The State advised the trial court that it expected Deputy Ken Hunt to testify at trial that the Appellant told the officer at the scene "that he was the driver, that he was drunk, and that it was his fault." The State said Officer Jim Norton would have testified that the Appellant smelled of alcohol. The Appellant was seriously injured but was able to walk around at the scene. Due to his injuries, the officers were not able to draw blood from him "in the normal T.B.I. test kit." Later, though, the officers obtained a search warrant and received a tube containing blood that was drawn from the Appellant at the hospital two and one-half hours after the crash. The Appellant's blood alcohol level was .022.

Two or three days later, State Trooper James Smith went to the hospital to interview the Appellant. The Appellant admitted that he was the driver of the vehicle and that he was driving about eighty miles per hour in a forty-five-mile-per-hour zone. The State stated at the plea hearing, "[The Appellant] admitted that he had been drinking and that his judgment was impaired, that he was, in effect, buzzed at the time of the crash, and that drinking contributed to his speeding and contributed to the crash." The Appellant stipulated to the facts given by the State, and sentencing was set for July 18, 2016.

At the sentencing hearing, Deputy Hunt testified that just before midnight on April 12, 2014, he responded to a call concerning a car crash. When he arrived at the scene, the Appellant walked up to his vehicle. The Appellant could not tell Deputy Hunt how many children had been in the car, and Officer Hunt could find only three children. The fourth child was found about thirty-five minutes later.

Andrea Bass, Brandon Anderson's mother, testified that her family had been dealing with "depression, amidst anger, sorrow, and guilt" since the crash. Moreover, one of Brandon's brothers committed suicide due to the distress caused by Brandon's death. Ms. Bass said she did not recognize Brandon at the hospital, and she read the following statement from the witness stand:

> His head was fractured and so swollen and his face had been
> so badly deformed from his facial bones being completely
> shattered from the impact of being thrown from a vehicle
> found to be going at speeds of excess of more than a hundred
> miles per hour.

Ms. Bass asked that the trial court "hand down the heaviest possible sentencing" to the Appellant. She also asked that the court order the Appellant to pay "a dollar a week" as a

reminder of his actions. Brian Anderson, Brandon's father, also testified and asked that the judge order the Appellant to serve the maximum sentence allowed for each conviction.

Bobby Maturen, Sr., the father of Bobby, Robert, and Cole Maturen, testified that the Appellant should receive the maximum sentence for each conviction. Bobbie Sue Maturen, their mother, also testified and was asked if she had anything to say about the Appellant. She stated:

> He was in drug court. He had choices. He made the wrong choices. . . . He was on his second chance and he took it upon himself to put four innocent children in the car while he was drinking and decided it would be fun to go a hundred miles an hour. That's irresponsible, stupid, and he should suffer the maximum consequences for his actions.

Doug Davis, an officer with the Fayette County Sheriff's Department, testified that after obtaining a warrant for the Appellant's arrest, he went to look for the Appellant at the indicated address on Johnson Drive. When he got to the house, nobody was home. However, a note had been left on the living room table. The note read, "'You can call if you want. I'm not going to be found unless I want to be.'"

The State introduced the Appellant's presentence report into evidence. According to the report, the then twenty-seven-year-old Appellant dropped out of high school in the twelfth grade and did not obtain his GED. In the report, the Appellant described his physical health as "fair" due to being diagnosed with diabetes at age seventeen and his mental health as "excellent." The Appellant stated in the report that he consumed alcohol "to excess on occasion" but denied that alcohol "caused any problems with his family or other areas of his life." He said that he first smoked marijuana when he was fifteen and first used methamphetamine when he was sixteen, that he used the drugs daily, and that he never sought treatment. The report showed that he worked as an engraver at Things Remembered from November 2013 to January 2014 and that he worked for his stepfather, a crop-duster, by loading airplanes from the ages of fourteen to twenty-four. The Appellant also reported that he worked "brief stints" at various fast food restaurants but that none of them lasted more than a couple of weeks. According to the report, on March 17, 2014, the Appellant was convicted in the Gosnell Arkansas District Court of possessing instruments of a crime. On November 12, 2015, he pled guilty in the Fayette County Circuit Court to fraudulent use of a credit card, unauthorized use of an automobile, and theft, all misdemeanors. The following charges were reported by the Department of Safety Records: failure to appear in court, "unsafe operation/misc violation," and failure to show proof of insurance.

The prosecutor described the facts of this case as "outrageous" and said that the wreck was the result of the Appellant's "unbelievable indifference to the lives of these children." The State sought to enhance the Appellant's sentences pursuant to Tennessee Code Annotated section 40-35-114.

First, the State advised the trial court about the Appellant's previous criminal activity and requested that the trial court enhance his sentences pursuant to Tennessee Code Annotated section 40-35-114(1). The State noted that the factor allowed enhancement for previous criminal behavior, not just criminal convictions.

The State also requested that the trial court enhance the Appellant's sentences pursuant to Tennessee Code Annotated section 40-35-114(10) because he had no hesitation about committing a crime when the risk to human life was high. The prosecutor stated, "We believe that that applies in this case as much or more than in any other case of vehicular homicide."

The State also asked that the trial court enhance the Appellant's sentences pursuant to Tennessee Code Annotated section 40-35-114(13). The State advised the court as follows: On January 21, 2014, the Appellant took his stepfather's debit card and Mini Cooper, the same one involved in the crash on April 12, 2014, without permission. The Appellant obtained money with the debit card and abandoned the Mini Cooper in Arkansas. In February 2014, the Appellant pled guilty to fraudulent use of a credit card, unauthorized use of a vehicle, and theft, all misdemeanors, in the Fayette County General Sessions Court. As part of the Appellant's plea agreement, he entered the drug court program. Apparently, though, the judge failed to sign any documentation ordering the Appellant into the program. Nevertheless, the Appellant participated in the program for a couple of months and failed a drug test two days before the crash in this case. The Monday after the crash, the Appellant was "charged with a violation of probation through the drug court." A probation revocation hearing was held in which counsel for the Appellant advised the court that the court had never signed the paperwork ordering the Appellant into drug court. Accordingly, the court determined that it had not accepted the Appellant's pleas and, therefore, that it could not find the Appellant in violation of probation. The general sessions court and the parties decided to treat the case as if it were still pending. The State later indicted the Appellant, and he pled guilty to the same three misdemeanor charges on November 12, 2015. The State argued that the trial court should enhance the Appellant's sentences in the instant case pursuant to: (1) Tennessee Code Annotated section 40-35-114(13)(A) because he was on bail or pretrial release for the previous offenses at the time of the wreck and was later convicted of those offenses; (2) Tennessee Code Annotated section 40-35-114(13)(F) because he was on some form of judicially ordered release at the time of the wreck; and (3) Tennessee Code Annotated

- 5 -

section 40-35-114(13)(G) because he was on a type of release into the community under the supervision of the drug court at the time of the wreck.

The State also asked that the trial court enhance the Appellant's sentences because the victims were particularly vulnerable due to their ages. All of the victims were under the age of eighteen. Finally, the State requested that the court order consecutive sentencing because the Appellant was a dangerous offender.

Defense counsel noted that the Appellant's criminal history did not include any felonies and argued that enhancement factor (13) should not apply because no "effective" order placed the Appellant on any type of judicially ordered release. In mitigation, defense counsel argued that the trial court should consider the Appellant's youth and maturity level. See Tenn. Code Ann. § 40-35-113(6). Defense counsel explained his reasoning as follows:

> The Serenity report indicates the lack of maturity, his mental capacity of development, any other pertinent circumstances that may affect his ability to appreciate the nature of his conduct. And that's why I - Your Honor, that's why I have trouble with this case, to appreciate the nature of his conduct.

Defense counsel also requested that the trial court mitigate the Appellant's sentences because he had shown remorse, stating that the Appellant refused to request alternative sentencing "in front of these people who experienced this pain." Defense counsel also argued that the court should mitigate the Appellant's sentences because he accepted responsibility by fully disclosing his actions to the police. Defense counsel argued that the dangerous offender provision for consecutive sentencing did not apply because "this was a trip to the store that ended in a tragic way" and because the Appellant had no felony record to show he was a dangerous person.

The trial court stated that it had considered the presentence report, sentencing principles, the nature of the criminal conduct involved, mitigating and enhancement factors, the evidentiary exhibits admitted, and the Appellant's potential for rehabilitation. The court found the Appellant to be a Range I, standard offender. Concerning enhancement factors, the court stated as follows:

> The Court does find as an enhancing factor that the defendant has a previous history of criminal behavior in addition to those needed to establish the appropriate range. The Court also finds that the victims of the offense were particularly vulnerable because of their age, so the Court does find that as

an enhancement factor. . . . The Court also finds as [an] enhancement factor that the defendant before trial or sentencing has failed to comply with conditions of a judicial release into the community. The Court also finds that the defendant had no hesitation about committing a crime when the risk to human life was high.

Regarding the applicability of enhancement factor (13), the trial court stated as follows:

[T]he Court does find he's on some type of judicially ordered release. The Court, in following the technical aspect of the law, does not find he was actually convicted in the General Sessions Court. The Court must take note that the conviction was, in fact, in this court, therefore, while there was some type of release, I don't think it could be fairly deemed to be a conviction and probation in the lower court. However, he was released into the community and he was given some restrictions to follow that he failed to follow.

Regarding the mitigating factors requested by defense counsel, the trial court noted that the Appellant failed to offer a statement of remorse at the sentencing hearing. The court found that the Appellant was not a candidate for rehabilitation, noting that the Appellant's presentence report indicated he had a history of drug and alcohol abuse and a criminal record. The court also found that the Appellant was not a candidate for rehabilitation because he was unable to abide by the requirements of the drug court.

As to consecutive sentencing, the trial court found that the Appellant was a dangerous offender. The court ordered that the Appellant serve twelve years for vehicular homicide, a Class B felony; twelve years for aggravated child neglect, a Class B felony; and four years for each vehicular assault, a Class D felony. The court also ordered that the Appellant serve the twelve-year sentences concurrently with each other but consecutively to each of the three, four-year sentences for a total effective sentence of twenty-four years.

## II. Analysis

On appeal, the Appellant contends that the trial court erred by enhancing his sentences based upon the victims' vulnerability due to their ages, by finding him to have been on some type of judicially ordered release into the community, and by finding that he had no hesitation about committing a crime when the risk to human life was high. He also contends that the trial court erred by ordering consecutive sentencing on the basis

that he was a dangerous offender. The State argues that trial court properly sentenced the Appellant. We conclude that the Appellant is not entitled to relief.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable

- 8 -

range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

A. Enhancement of Sentences

The Appellant first challenges the trial court's application of enhancement factor (4), which provides that "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability." Tenn. Code Ann. § 40-35-114(4). The record reflects that the victims were fifteen, fourteen, eleven, and seven at the time of the wreck. This court has stated that "merely establishing the youth of the victim at the time of the crime's perpetration is an insufficient basis for applying this fourth enhancement factor" and that "[t]here must be evidence, in addition to the victim's age, to warrant application of this . . . factor." State v. Mark Summers, No. 03C01-9606-CR-00235, 1997 WL 785677, at *5 (Tenn. Crim. App. at Knoxville Dec. 4, 1997). For example, the trial court should consider whether the evidence in the record demonstrates that due to the victim's age, the victim was unable to resist the crime, summon help, or testify at a later date. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). In Mark Summers, the defendant swerved into the adjacent lane of traffic, causing a car wreck that injured a six-year-old child. No. 03C01-9606-CR-00235, 1997 WL 785677, at *1. On appeal, this court concluded that enhancement factor (4) was not applicable to the Appellant's sentence for vehicular assault because other than age, the record contained no facts to establish that the victim was particularly vulnerable. Id. at *5. In the instant case, the trial court failed to identify anything beyond the victims' ages that would warrant applying this enhancement factor. Therefore, we conclude that the trial court erred by applying enhancement factor (4) to the Appellant's sentences.

The Appellant also contends that the trial court erred by applying enhancement factor (10), that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). He argues that he pled guilty to five crimes involving four victims and that there is no evidence in the record of a risk to anyone other than the named victims. The Appellant notes that although the record reflects that he was traveling at high speeds while under the influence of alcohol, the record does not reflect that anyone but the victims was placed in danger.

This court has stated that enhancement factor (10) may be applied to a defendant's sentence "if it can be determined from the record that the defendant created a high risk to lives other than the victim's life." State v. Jimmy Wayne Perkey, No. E2002-00772-CCA-R3-CD, 2003 WL 21920255, at *3 (Tenn. Crim. App. at Knoxville, August 12,

2003). In <u>Jimmy Wayne Perky</u>, this court held that because there was no evidence regarding the amount of traffic on the road or that other people were endangered by the defendant's drunk driving, the enhancement factor was not applicable. <u>Id.</u> However, in <u>State v. Williamson</u>, this court held that factor (10) applied to sentences for vehicular homicide and vehicular assault because the accident occurred on Labor Day when more people were using the roadway than on an average weekday and "two witnesses testified that the appellant's vehicle went across the center lane and into the opposing lane of traffic on more than one occasion." 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995).

We agree with the Appellant that the facts in this case are insufficient to apply this enhancement factor. The record reflects that the Appellant chose to drive well-above the speed limit with children in his car while under the influence of alcohol. However, the wreck occurred close to midnight, and the record does not indicate that other traffic or people were on the road who would have been endangered by the Appellant's precarious driving. Therefore, the trial court erred by applying enhancement factor (10).

The Appellant also contends that the trial court erred by applying enhancement factor (13). We disagree. Tennessee Code Annotated section 40-35-114(13)(A) provides for enhancement of a sentence if, "[a]t the time the felony was committed, . . . [the defendant was] . . . [r]eleased on bail or pretrial release, if the defendant is ultimately convicted of the prior misdemeanor or felony." The Appellant's presentence report explains as follows: In February 2014, the Appellant pled guilty to fraudulent use of a credit card, unauthorized use of an automobile, and misdemeanor theft and was ordered to complete general sessions drug court. In November 2014, counsel for the Appellant "successfully argued" that the Appellant was never legally ordered into the drug court program because the general sessions court judge failed to sign the order accepting the Appellant's guilty pleas and placing him in the program. Therefore, the Appellant's pleas were set aside, and his charges were deemed to be pending. The grand jury eventually indicted the Appellant, and he pled guilty to the three misdemeanors on November 12, 2015. Under these facts, we concluded that the Appellant was on bail or some type of pretrial release for those crimes when he committed the offenses in the present case. Thus, enhancement factor 13(A) applies to his sentences.

Although the trial court misapplied enhancement factors (4) and (10), the trial court properly applied factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." As stated above, factor 13(A) also applied to the Appellant's sentences. The enhancement factors are advisory only. <u>See</u> Tenn. Code Ann. § 40-35-114; <u>see also</u> <u>Bise</u>, 380 S.W.3d at 701; <u>Carter</u>, 254 S.W.3d at 343. Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." <u>Carter</u>, 254 S.W.3d at 345. In other words, "the

trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. We conclude that the trial court did not abuse its discretion by enhancing the Appellant's sentences, nor do we find the length of the sentences excessive.

### 2. Consecutive Sentencing

The Appellant claims that the trial court erred when it classified him as a dangerous offender and imposed consecutive sentencing. We conclude that the trial court properly ordered consecutive sentencing.

In ordering consecutive sentencing on the grounds that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high, the trial court is required to determine that the extended sentence is necessary to protect the public against further criminal conduct by the defendant. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). Further, the consecutive sentences must reasonably relate to the severity of the committed offenses. Id.

Here, the trial court stated as follows regarding consecutive sentencing:

> Again, the Court must follow the law in doing so, and the only - the only part I think is relevant as to concurrent or consecutive sentencing is whether the defendant is a dangerous offender whose behavior indicates little or no regard to human life and no hesitation about committing a crime in which the risk to human life was high. . . . [T]he record is clear that he was traveling . . . eighty or ninety miles an hour. . . . [H]e topped the hill traveling too fast which made the car he was traveling in a dangerous weapon, therefore, since he was operating it, the Court finds that he becomes a dangerous offender when he travels at a high rate of speed with children in his car. The Court also finds that that indicates little or no regard for human life. He is responsible for all those in his car yet he committed this knowing that there was a risk to human life and that it was high.

The Court finds that the circumstances surrounding the commission of this offense were aggravated. He was a dangerous offender. They were aggravated because of the roadway and the speed. The Court also looks as to whether or not a confinement for an extended amount of time is necessary to protect society from the defendant's unwillingness to lead a productive life. . . . He was being supported by family and also the defendant resorted to criminal activity, i.e., putting the children in the car at a high rate of speed. In furtherance of his lifestyle, he was making a beer run. So, again, all of that the Court finds shows his unwillingness to be productive and to further his bad choices and bad lifestyle. Therefore, the Court will be rendering consecutive sentences on part of this sentencing.

The trial court's comments demonstrate that the court found that consecutive sentences reasonably related to the severity of the offenses. We agree. The record shows that the Appellant was operating a vehicle under the influence of alcohol, that he allowed four children into the vehicle, that none of the children was wearing seatbelts, and that he chose to drive over a hill at speeds up to one hundred miles per hour. When the police arrived at the scene of the crash, the Appellant could not even remember how many children were in the car. The court's comments also demonstrate that the court found that the public needed protection from the Appellant. Again, we agree. The Appellant has prior criminal convictions and an extensive history with drugs and alcohol. He committed fraudulent use of a credit card, unauthorized use of an automobile, and theft just three months before the wreck and failed a drug test just two days before the wreck. Yet, he chose to drive while intoxicated with four minors in the car. In sum, we conclude that the record establishes that the aggregate sentence reasonably relates to the severity of the offenses and that the total sentence is necessary for the protection of the public from further crimes by the Appellant. Therefore, the trial court did not abuse its discretion by finding that the Appellant was a dangerous offender and properly ordered consecutive sentencing.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 12 -